UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                :

TARIK VAUGHN,                                      :

                                Plaintiff,     :
                                                   :       12 Civ. 2696 (JPO)
              -against-                   :
                                                   :       <u>OPINION AND ORDER</u>

CAPTAIN STRICKLAND, et al.,       :

                                Defendants.  :
------------------------------------------------------------ X

------------------------------------------------------------X
                                                   :

CARL WILLIAMS,                          :

                                Plaintiff,     :
                                                 :       12 Civ. 2995 (JPO)
              -against-                 :

CAPTAIN STRICKLAND, et al.,       :

                                Defendants.  :
------------------------------------------------------------ X

------------------------------------------------------------X
                                                 :

JAMEL WHITE,                            :

                                Plaintiff,     :
                                                 :       12 Civ. 3333 (JPO)
              -against-                 :

DORA SCHRIRO, et al.,              :

                                Defendants.  :
------------------------------------------------------------ X

```
---------------------------------------------------------------X
                                                                :
ANTHONY ESQUILIN,                                               :
                                                                :
                               Plaintiff,                       :
                                                                :        12 Civ. 3335 (JPO)
                 -against-                                      :
                                                                :
DORA SCHRIRO, et al.,                                           :
                                                                :
                               Defendants.                      :
-------------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

      These civil rights actions all arise from prison officials' strip search of several inmates in the bathroom on the 8-Main Housing Unit in the E.M.T.C. holding facility at Rikers Island on March 9, 2012. Although the actions were brought separately, each Plaintiff alleges that he was strip searched incident to the same occurrence on the evening of March 9. Accordingly, the Court addresses the cases together in a single opinion.

      Plaintiff Tarik Vaughn ("Vaughn") asserts violations of his Fourth and Eighth Amendment rights, pursuant to 42 U.S.C. § 1983, against Defendants Captain Strickland ("Strickland"), Correction Officer Pagan ("Pagan"), Correction Officer McMillian ("McMillian"), and Warden Edward Duffy ("Duffy"). Plaintiff Carl Williams asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983, against Defendants Strickland, Pagan, McMillian, Duffy, and the City of New York ("the City"). Plaintiff Jamel White ("White") alleges violations of his Fourth and Eighth Amendment rights, pursuant to 42 U.S.C. § 1983, against Strickland, Pagan, McMillian, Duffy, and Commissioner of the New York City Department of Corrections, Dr. Dora Schriro ("Schriro"). Plaintiff Anthony Esquilin ("Esquilin") alleges violations of his First, Fourth, and Eighth Amendment

2

Rights, pursuant to 42 U.S.C. § 1983, against Strickland, Pagan, McMillian, Duffy, and Schriro. Collectively, the Defendants in each action are referred to as "Defendants."

Before the Court are the following: Defendants' motion to dismiss Vaughn's Complaint pursuant to Federal Rule of Civil Procedure 12(c); Defendants' motion to dismiss Williams's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); Defendants' motion to dismiss White's Complaint pursuant to Federal Rule of Civil Procedure 12(c); and Defendants' motion to dismiss Esquilin's Complaint pursuant to Federal Rule of Civil Procedure 12(c).

For the reasons that follow, Defendants' motions are granted.

## I.     Background

### A.     Factual Background[1]

On the evening of March 9, 2012, a search was conducted on the 8-Main Housing Unit at E.M.T.C. on Rikers Island. Between the hours of 6:30 and 8:30 pm, approximately 9 to 12 inmates, including the four plaintiffs, were directed by Strickland to enter the bathroom area of the Housing Unit. Once in the bathroom, Strickland instructed several officers, including Pagan, to carry out a visual strip search. Accordingly, Plaintiffs were ordered to strip down to nothing so as to facilitate a full body visual cavity search. There were no partitions, barriers, or dividers separating the inmates subjected to the search. Esquilin alleges that he told Pagan that he was Catholic, and as such was not supposed to be strip searched or forced to undergo a visual body search, to which Pagan responded: "You are not Catholic, your [sic] nothing but the devil."

---

[1] The facts are taken from Plaintiffs' respective Complaints, and, for the purposes of these motions, are presumed true. Plaintiffs' respective versions of the events of March 9 are largely consistent. Accordingly, the Court notes individual Plaintiffs only where their accounts vary from those of the group.

Each Plaintiff was instructed to take hold of his penis with one hand, and his testicles with the other, after which each individual was told to bend over and squat, exposing his anal area to the inspecting officers. When Plaintiffs inquired to McMillian as to the purpose of the search, he responded with some version of: "Shut the fuck up before I place a shank on you, I have enough to go around."

As a result of the visual strip search, all Plaintiffs reported feelings of emotional distress, sexual harassment, and fears for their safety. Esquilin also alleges that all his food and property was destroyed in the course of the search.

While Williams's original Complaint (Complaint, Dkt. No. 2 ("Compl."), at 3) exactly tracked the allegations of the other plaintiffs, discussing a visual strip search that occurred in the Housing United bathroom on March 9, 2012, he filed an Amended Complaint in September 2012 (Amended Complaint, Dkt. No. 15 ("FAC").) Williams's allegations in the FAC vary dramatically from those in his original Complaint. For example, Williams adds that female corrections officers were present during the search. (FAC at ¶ 2.) Additionally, he claims that Pagan instructed Williams to keep his hands up while Pagan "grabbed [Williams's] penis and lifted up [Williams's] testicles roughly." (*Id.* at ¶ 3.) The FAC also includes an allegation that Pagan inserted his finger into Williams's anus, moving it around within Williams's anal passage, in violation of his constitutional rights. (*Id.*; *id.* at ¶ 7.)

### B. Procedural Background

Plaintiffs filed their original Complaints in April 2012. Defendants answered all the Complaints in July 2012. Defendants later moved for judgment on the pleadings with respect to Vaughn, White, and Esquilin's claims, in October 2012. Williams filed his FAC in September 2012, and Defendants moved to dismiss that Complaint in October 2012.

**II.     Legal Standard**

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," a complaint is said to have facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "*Pro* se status does not . . . excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure." *Payen v. Oldcastle Precast, Inc.*, No. 10 Civ. 00887 (BSJ), 2012 WL 5873595, at *1 (S.D.N.Y. Nov. 19, 2012) (citations omitted). Courts nevertheless read *pro se* complaints liberally and interpret them as raising the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted). Accordingly, on a Rule 12(c) motion, the Court must also accept as true the non-movant's allegations and draw all reasonable inferences in the nonmovant's favor. *See id.*; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). These rules govern the Court's analysis.

**III.    Discussion**

    **A.     Eighth Amendment**

The Eighth Amendment provides that "cruel and unusual punishments [shall not be] inflicted." U.S. Const. amend. VIII. "That rule, applicable to the states through the Fourteenth Amendment, is violated by unnecessary and wanton inflictions of pain and suffering." *Walker v. Schriro*, No. 11 Civ. 9299 (JPO), 2013 WL 1234930, at *11 (S.D.N.Y. Mar. 26, 2013) (citations

5

omitted). Prison officials violate the Eighth Amendment only when two requirements are met: (1) the alleged deprivation must, as an objective matter, be "sufficiently serious," and (2) the alleged perpetrator must possess a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotations omitted). In the context of prison conditions, courts have defined this culpability as "deliberate indifference" to the health and safety of inmates. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer*, 511 U.S. at 834.

Sexual abuse by prison officials is accordingly proscribed by the Eight Amendment. *See Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997) ("We therefore conclude that sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment."). In order to rise to the level of a constitutional violation, however, such abuse must be both objectively severe and the product of more than mere neglect. *See id.* at 861. For example, in *Boddie*, despite a prisoner's allegations of verbal harassment, touching, and pressing without the prisoner's consent, the court found that "[n]o single incident that he described was severe enough to be 'objectively, sufficiently serious'" so as to give rise to an Eighth Amendment claim. *Id.* at 861. Instead, the *Boddie* court found that while "despicable," the incidents were more akin to "state tort actions," rather than "involv[ing] a harm of federal constitutional proportions." *Id.*; *but see Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia*, 877 F. Supp. 634, 664-65 (D.D.C. 1994), *vacated in part, modified in part on unrelated grounds by Dep't of Corrections v. District of Columbia*, 899 F. Supp. 659 (D.D.C. 1995) ("Under the objective standard, Plaintiffs have demonstrated a deprivation which amounts to a wanton and unnecessary infliction of pain. The evidence revealed a level of sexual harassment which is so malicious that it violates contemporary standards of decency. The physical assaults endured by women prisoners at the

Annex, CTF and the Jail unquestionably violate the Eighth Amendment.  Rape, coerced sodomy, unsolicited touching of women prisoners' vaginas, breasts and buttocks by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" (citations omitted)).

      Courts in this Circuit interpreting *Boddie* have noted the difficulty of alleging an Eighth Amendment violation deriving from "a single strip search," as such searches generally reflect a legitimate penological purpose, rather than the wanton infliction of an objectively serious deprivation.  *See, e.g.*, *Castro-Sanchez v. N.Y.S. Dep't of Correctional Servs.*, No. 10 Civ. 8314 (DLC), 2012 WL 4474154, at *3 (S.D.N.Y. Sept. 28, 2012) ("Castro–Sanchez has failed to allege a sufficiently serious violation of his right to be free from cruel and unusual punishment when judged under an objective standard.  The groping of his buttocks during a single strip search is far less egregious than the conduct alleged in *Boddie*.  Since the conduct described in *Boddie* was insufficient to constitute a violation of a prisoner's Eighth Amendment rights, *a fortiori* the conduct alleged by Castro–Sanchez is insufficient." (footnote omitted)); *accord Arnold v. Westchester Cty.*, No. 09 Civ. 3727 (JSR)(GWG), 2012 WL 336129, at *11 (S.D.N.Y. Feb. 3, 2013), *report and recommendation adopted*, No. 09 Civ. 3727 (JSR), 2012 WL 841484 (S.D.N.Y. Mar. 13, 2012) ("Claims of sexual abuse are cognizable under § 1983.  Strip searches of inmates, however, are constitutionally valid if they are reasonably related to a 'legitimate penological interest.'" (citations omitted)).  Even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation.  *See, e.g.*, *LaRocco v. N.Y.C. Dep't of Corr.*, No. 99 Civ. 9759 (SHS)(RLE), 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001), *report and recommendation adopted*, Sept. 26, 2001 (Dkt. No. 31) (holding that

allegations that the officer forced the plaintiff-inmate to "undergo a routine where he had to lift his penis and spread his buttocks about three times" were "not severe enough" to constitute an Eighth Amendment claim and recommending dismissal).

Despite the privacy interest undeniably implicated by a strip search, to date in this Circuit there has been "no case in which a plaintiff ha[s] established an actionable claim of sexual harassment under *Boddie* without having physical contact with the alleged perpetrator[.]" *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 508 (S.D.N.Y. 2012). In fact, even "significant but episodic physical contact has often been held insufficient to make out an Eighth Amendment claim for sexual harassment." *Id.* (citing cases). As Judge Engelmayer recounted in detail in *Vogelfang*, courts in this Circuit have declined to find actionable Eighth Amendment violations in each of the following circumstances: where Defendant asked Plaintiff to have sex with her and expose himself to her, *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002); where Defendant's hands might have come in contact with Plaintiff's groin while securing Plaintiff for transport, *Johnson v. Enu*, No. 08 Civ. 158 (FJS)(DRH), 2011 WL 3439179, at *15 (N.D.N.Y. July 13, 2011), *report and recommendation adopted*, No. 9:08 Civ.158 (DRH), 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011); where Plaintiff made allegations of sexual impropriety during strip frisks occurring on three separate occasions, *Irvis v. Seally*, No. 09 Civ. 543 (GLS)(ATB), 2010 WL 5759149, at *4 (N.D.N.Y. Sept. 2, 2010), *report and recommendation adopted*, No. 9:09 Civ. 543 (GLS), 2011 WL 454792 (N.D.N.Y. Feb. 4, 2011); where Plaintiff alleged the defendant-officer, in the course of a strip search, "grabbed and squeezed his penis," *Excell v. Fischer*, No. 08 Civ. 3111711 (DNH), 2009 WL 3111711, at *7 (N.D.N.Y. Sept. 24, 2009); and where Plaintiff claimed Defendant had squeezed his genitals during the course of several pat-frisks, *Montero v. Crusie*, 153 F. Supp. 2d 368, 373, 376 (S.D.N.Y. 2001).

B.     **Fourth Amendment**

Strip searches also can implicate the Fourth Amendment, which proscribes *unreasonable* searches and seizures.  However, there is a "long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment."  *Castro-Sanchez*, 2012 WL 4474154, at *3 (citing *Covino v. Patrissi*, 967 F.2d 73, 77-80 (2d Cir. 1992)).  This conclusion was buttressed by the Supreme Court's decision in *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510 (2012), where the Court reiterated the constitutionality of visual strip searches, even for those inmates accused of minor offenses.  *See id.* at 1518 ("The question here is whether undoubted security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband.  The Court has held that deference must be given to the officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated.  Petitioner has not met this standard, and the record provides full justifications for the procedures used." (internal citation omitted)).  Nevertheless, "the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable."  *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) (citation omitted).

"Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal."  *Id.*  For example, the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520 (1979), found visual strip searches of inmates' body cavities after contact visits with a person from outside the institution to be reasonable in light of the "serious security dangers" of

9

prison, together with the "common occurrence" of the "[s]muggling of money, drugs, weapons, and other contraband." *Id.* at 558-59.  Similarly, the Second Circuit, in *Covino*, considered a prison's practice of subjecting inmates to routine and random visual body cavity searches, finding them reasonably related to legitimate penological interests.  967 F.2d at 79.  Accordingly, despite the fact that visual strip searches are "undoubtedly humiliating and deeply offensive to many," prison officials may reasonably "require all arrestees *who are committed to the general population of a jail* to undergo visual strip searches not involving physical contact by corrections officers."  *Florence*, 132 S. Ct. at 1524 (Alito, J., concurring) (emphasis in original).  Additionally, it is well established that in the course of these searches, "officers may direct the arrestees to disrobe, shower, and submit to a visual inspection"; moreover, "[a]s part of the inspection, the arrestees may be required to manipulate their bodies."  *Id.*; *accord Malik v. City of New York*, No. 11 Civ. 6062 (PAC) (FM), 2012 WL 3345317, at *13 (S.D.N.Y. Aug. 15, 2012), *report and recommendation adopted*, No. 11 Civ. 6062 (PAC), 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012) ("Although he complains about the manner in which the strip search was conducted based on the comments made by the officers, he does not allege any physical or sexual abuse.  Moreover, Malik concedes that the strip search was part of an 'institutional' search.  Such '[r]outine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.'  His strip-search claim therefore must be dismissed." (internal citations omitted)).

    **C.**    **Application of Law to Facts**

Here, Plaintiffs fail to state cognizable violations of the Eighth and Fourth Amendments.  First, the alleged abuse caused by the visual cavity search was not severe enough to satisfy the objective seriousness requirement of Eighth Amendment analysis.  As discussed, visual cavity

searches have been consistently upheld as a legitimate penological restriction.  *See, e.g.*, *Castro-Sanchez*, 2012 WL 4474154, at *3 ("This conclusion is buttressed by the long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.").  Moreover, the one stray comment of McMillian, namely that the inmates "shut the fuck up" or he would "place a shank on [them]," and Pagan's comment to Esquilin regarding Esquilin's Catholicism, while inappropriate and threatening if true, do not rise to the level of an Eighth Amendment violation.  *See Harris v. Lord*, 957 F. Supp. 471, 475 (S.D.N.Y. 1997) ("The law is clear that 'although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.'" (citations omitted)); *accord Gurevich v. City of New York*, No. 06 Civ. 1646 (GEL), 2008 WL 113775, at *4 n.6 (S.D.N.Y. Jan. 10, 2008) ("To the extent plaintiff premises her 42 U.S.C. § 1983 claim based on the officers' alleged pejorative language, the claim must be dismissed as a matter of law because, '[a]lthough indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under section 1983.'" (quoting *Harris*, 957 F. Supp. at 475)).  Additionally, insofar as Plaintiffs allege that the presence of other inmates underscores the unconstitutionality of the search, courts have repeatedly held "that strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns." *Miller v. Bailey*, No. 05 Civ. 5493 (CBA)(LB), 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (citing cases); *accord Israel v. City of New York*, No. 11 Civ. 7726 (JMF), 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012) (finding that the "presence of other inmates and officers, males and females" did not alter the court's determination that suspicion-less strip searches of Plaintiff were reasonably related to "legitimate security interests" (citations omitted)).

11

Similarly, in the Fourth Amendment context, searches such as the one conducted here have been construed as reasonable in light of the legitimate penological goal of maintaining a prison institution free of contraband or dangerous items. *See Covino*, 967 F.2d at 79 ("[I]n our view, on this record, NWSCF has demonstrated that the random visual body-cavity searches authorized by Procedure 300.10 are reasonably related to its legitimate penological interests." (footnote omitted)). This is not to suggest that inmates do not possess a privacy interest, as they undoubtedly do; however, "some aspects of that right must yield to searches for contraband, even random visual body-cavity searches, so that prison administrators may maintain security and discipline in their institutions." *Id.* (citation omitted). Moreover, even courts finding that prison officials behaved inappropriately during a given search have been reluctant to find a Fourth Amendment violation, in light of the important penological interests at stake. *See, e.g.*, *LaRocco*, 2001 WL 1029044, at *4 ("While, there may exist legitimate security concerns to justify Pitt's asking LaRocco to hold his genitalia and spread his buttocks, it is unlikely that such concerns would warrant this type of behavior occurring three times after a particular visit. In addition, . . . there exists no justification for the verbal abuse and threats that were part of the searches. However, as discussed below, these incidents do not rise to level of a constitutional violation.").

Williams did amend his pleadings, in response to Defendants' notice of their intention to move to dismiss his Complaint, and substituted claims of a visual cavity search with allegations that women prison officials were present while Pagan handled Williams's genitals roughly and inserted a finger into Williams's anus. These claims are directly contradictory to those advanced in Williams's original Complaint; accordingly the court strikes "the changed and inconsistent factual allegations as false and sham." *Jean-Laurent v. Lawrence*, No. 12 Civ. 1502 (JPO), 2013 WL 1129813, at *7 n.10 (S.D.N.Y. Mar. 19, 2013) (quoting *Bradley v. Chiron Corp.*, 136 F.3d

1317, 1326 (9th Cir.1998) (quotations omitted)); *accord Green v. Niles*, No. 11 Civ. 1349 (PAE), 2012 WL 987473, at *4-5 (S.D.N.Y. Mar. 23, 2012) (dismissing *pro se* Plaintiff's claims and declining to credit new allegations that are "utterly irreconcilable" with past allegations). The liberality with which courts examine *pro se* pleadings does not require a court to "accept as true allegations that conflict with a plaintiff's prior allegations." *Green*, 2012 WL 987473, at *5 (quotations omitted).

### D. Remaining Constitutional Claims

As noted, Esquilin also asserts violations of his First Amendment rights, alleging that there was no camera recording of the bathroom search, apparently suggesting that Defendants destroyed any official record of the occurrences. (Compl. at 3.) While "[t]he Second Circuit has not explicitly ruled on whether videotaping strip searches removes them from the realm of constitutionality, [] a handful of cases in this Circuit have used videotapes of strip searches as evidence without expressing a concern regarding their constitutionality." *Dye v. City of New York*, No. 09 Civ. 2460 (RJS)(RLE), 2011 U.S. Dist. LEXIS 76689, at *5 (S.D.N.Y. Mar. 29, 2011), *report and recommendation adopted* July 15, 2011 (Dkt. No. 32). It follows that given courts' treatment of the issue of videotaping, inmates do not have an affirmative constitutional right to the recordation of a given strip search. Accordingly, Esquilin fails to state a cognizable First Amendment violation.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motions to dismiss the Complaints in these actions are GRANTED.

The Clerk of the Court is directed to terminate the following motions: (1) Docket Entry Number 15 in 12 Civ. 2696; (2) Docket Entry Number 16 in 12 Civ. 2995; (3) Docket Entry Number 15 in 12 Civ. 3333; and (4) Docket Entry Number 18 in 12 Civ. 3335.  The Clerk is further directed to close each of these cases.


SO ORDERED.

Dated:  New York, New York
        July 11, 2013

_____
J. PAUL OETKEN
United States District Judge